## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SPRINT COMMUNICATIONS COMPANY, L.P.,** | **Case No.** |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **SOUTHERN NEW ENGLAND TELEPHONE COMPANY, CHARTER FIBERLINK-ALABAMA, LLC, CHARTER FIBERLINK CA-CCO, LLC, CHARTER FIBERLINK CT-CCO, LLC, CHARTER FIBERLINK-GEORGIA, LLC, CHARTER FIBERLINK-ILLINOIS, LLC, CHARTER FIBERLINK-MICHIGAN, LLC, CHARTER FIBERLINK CCO, LLC, CHARTER FIBERLINK-MISSOURI, LLC, CHARTER FIBERLINK NC-CCO, LLC, CHARTER FIBERLINK NV-CCVII, LLC, CHARTER FIBERLINK OR-CCVII, LLC, CHARTER FIBERLINK-SOUTH CAROLINA, LLC, CHARTER FIBERLINK-TENNESSEE, LLC, CHARTER FIBERLINK CC VIII, LLC, CITIZENS TELECOMMUNICATIONS COMPANY OF ILLINOIS, INC., FRONTIER COMMUNICATIONS-MIDLAND, INC., CITIZENS TELECOMMUNICATIONS COMPANY OF MINNESOTA, LLC, FRONTIER COMMUNICATIONS OF MINNESOTA, INC., CITIZENS TELECOMMUNICATIONS COMPANY OF NEW YORK, INC., FRONTIER COMMUNICATIONS OF NEW YORK, INC., FRONTIER TELEPHONE OF ROCHESTER, INC., CITIZENS UTILITIES RURAL COMPANY, INC., CITIZENS TELECOMMUNICATIONS COMPANY OF THE WHITE MOUNTAINS, INC., NAVAJO COMMUNICATIONS CO., INC.,** | **ECF CASE ELECTRONICALLY FILED**<br><br>**June 4, 2014** |

| | |
|---|---|
| **COMMONWEALTH TELEPHONE COMPANY, LLC, CTSI, LLC, FRONTIER COMMUNICATIONS OF PENNSYLVANIA, LLC, CITIZENS TELECOM SERVICES COMPANY, LLC, FRONTIER COMMUNICATIONS OF GEORGIA, LLC, FRONTIER COMMUNICATIONS OF IOWA, LLC, CITIZENS TELECOMMUNICATIONS COMPANY OF NEBRASKA, LLC, CITIZENS TELECOMMUNICATIONS COMPANY OF NEVADA, FRONTIER COMMUNICATIONS OF WISCONSIN, LLC, FRONTIER COMMUNICATIONS-ST. CROIX, LLC, FRONTIER COMMUNICATIONS OF THE SOUTH, LLC, RHINELANDER TELEPHONE, LLC, CITIZENS TELECOMMUNICATIONS COMPANY OF WEST VIRGINIA, FRONTIER WEST VIRGINIA, INC., FRONTIER NORTH, INC., FRONTIER COMMUNICATIONS OF THE SOUTHWEST, INC., FRONTIER COMMUNICATIONS NORTHWEST, INC.,**<br><br>**Defendants.** | |

Sprint Communications Company L.P. ("Sprint"), by and through its undersigned attorneys, brings this Complaint against the above-captioned Defendants (collectively, "Defendants") as follows:

## INTRODUCTION

1.     This lawsuit concerns the exchange of wireless communications between Commercial Mobile Radio Service ("CMRS") carriers and the Defendants where Sprint acts as an intermediary carrier.  Since 1996, the Federal Communications Commission ("FCC") has made plain that CMRS calls which originate and terminate in the same "Major Trading Area" or

2

"MTA" (*i.e.*, intraMTA calls) are not subject to switched access charges. Despite this clear recitation of law, and reiteration of the point by the FCC and federal courts, the Defendants all charge Sprint originating and terminating switched access charges on intraMTA calls from their interstate and intrastate switched access tariffs. Sprint seeks a refund of these improper charges and a judicial declaration that the Defendants' should cease and desist this illegal practice.

2.     The telecommunications industry was historically comprised of local and long distance carriers that provided wireline service. State public utilities commissions, such as the Iowa Utilities Board, defined the boundaries of the local exchange areas: wireline calls originating (i.e., made) and terminating (i.e., received) within a local exchange were local calls and those originating and terminating in different local exchanges (*i.e.,* interexchange calls) were long distance calls.

3.     In most instances, local exchange carriers ("LECs") – like each of the Defendants – owned the facilities (otherwise known as a "common line" or "loop") connected to each end user's home or business. As a result, the LECs charged long distance carriers (also referred to as "interexchange carriers" or "IXCs") like Sprint "originating switched access charges" to originate a long distance toll call, and "terminating switched access charges" for the use of that common line to terminate a long distance toll call.

4.     The LECs, subject to supervision of regulators, defined the rates, terms and conditions under which they would assess switched access charges on calls originated for or terminated for long distance carriers. These rates, terms and conditions were set forth in each LEC's access tariffs:  interstate access tariffs were filed with the Federal Communications Commission ("FCC"), and intrastate access tariffs were filed with state public utilities commissions, such as the Connecticut Public Utilities Regulatory Authority.

5.     When wireless service entered the commercial market, the FCC defined different boundaries to determine when a wireless call – otherwise known as a Commercial Mobile Radio Service or "CMRS" call – is considered a local call.  A wireless call is one that originates from or terminates to a CMRS provider (hereinafter "CMRS calls").

6.     The FCC decided to use the largest wireless license area at that time – the Major Trading Area or "MTA" – as the area within which calls would always be deemed local.  *See Exhibit 1* for an MTA Map.  Calls originated and terminated in the same MTA ("intraMTA") are considered local calls.

7.     Over a period of years beginning with the First Report and Order in 1996, the FCC has issued rules and decisions stating that intraMTA calls are not subject to switched access charges.  Numerous federal courts have uniformly upheld these rules and decisions.  Despite this, LECs like the Defendants continue to assess tariffed switched access charges on Sprint in violation of law, and in breach of their interstate and/or intrastate access tariffs.

8.     Defendants' illegal and improper billings on intraMTA calls have caused Sprint millions of dollars in damages in violation of the Defendants' interstate and intrastate access tariffs, and the federal Communications Act.  Sprint seeks to obtain money damages as well as its reasonable attorneys' fees and costs incurred in prosecuting this action.

## PARTIES

9.     Sprint is a Delaware limited partnership.  Sprint's general and limited partners and their place of incorporation are as follows:  US Telcom, Inc. is a Kansas corporation with its principal place of business in Kansas; UCOM, Inc. is a Missouri Corporation with its principal place of business in Kansas; Utelcom, Inc. is a Kansas Corporation with its principal place of business in Kansas; and, Sprint International Communications Corporation is a Delaware

4

corporation with its principal place of business in Kansas. Thus, for the purposes of 28 U.S.C. § 1332, Sprint is a citizen of Kansas, Missouri, and Delaware. At all times relevant, Sprint is and has been qualified and registered to do business in the state of Missouri.

10.     Defendant Southern New England Telephone Company ("SNET") is a corporation organized under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut. SNET billed Sprint interstate and intrastate switched access charges on intraMTA calls that originated and/or terminated in the state of Connecticut.

11.     Defendant Charter Fiberlink-Alabama, LLC ("Charter Alabama") is an Alabama limited liability company with its principal place of business in Stamford, Connecticut. Charter Alabama billed Sprint interstate and intrastate switched access charges on intraMTA calls that originated and/or terminated in the state of Alabama.

12.     Defendant Charter Fiberlink CA-CCO, LLC ("Charter California") is a California limited liability company with its principal place of business in Stamford, Connecticut. Charter California billed Sprint interstate and intrastate switched access charges on intraMTA calls that originated and/or terminated in the state of California.

13.     Defendant Charter Fiberlink CT-CCO, LLC ("Charter Connecticut") is a Connecticut limited liability company with its principal place of business in Stamford, Connecticut. Charter Connecticut billed Sprint interstate and intrastate switched access charges on intraMTA calls that originated and/or terminated in the state of Connecticut.

14.     Defendant Charter Fiberlink-Georgia, LLC ("Charter Georgia") is a Georgia limited liability company with its principal place of business in Stamford, Connecticut. Charter

Georgia billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Georgia.

15.     Defendant Charter Fiberlink-Illinois, LLC ("Charter Illinois") is an Illinois limited liability company with its principal place of business in Stamford, Connecticut.  Charter Illinois billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Illinois.

16.     Defendant Charter Fiberlink-Michigan, LLC ("Charter Michigan") is a Michigan limited liability company with its principal place of business in Stamford, Connecticut.  Charter Michigan billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Michigan.

17.     Defendant Charter Fiberlink CCO, LLC ("Charter Minnesota") is a Minnesota limited liability company with its principal place of business in Stamford, Connecticut.  Charter Minnesota billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Minnesota.

18.     Defendant Charter Fiberlink-Missouri, LLC ("Charter Missouri") is a Missouri limited liability company with its principal place of business in Stamford, Connecticut.  Charter Missouri billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Missouri.

19.     Defendant Charter Fiberlink NC-CCO, LLC ("Charter North Carolina") is a North Carolina limited liability company with its principal place of business in Stamford, Connecticut.   Charter North Carolina billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of North Carolina.

20.     Defendant Charter Fiberlink NV-CCVII, LLC ("Charter Nevada") is a Nevada limited liability company with its principal place of business in Stamford, Connecticut.  Charter Nevada billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Nevada.

21.     Defendant Charter Fiberlink OR-CCVII, LLC ("Charter Oregon") is an Oregon limited liability company with its principal place of business in Stamford, Connecticut.  Charter Oregon billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Oregon.

22.     Defendant Charter Fiberlink-South Carolina, LLC ("Charter South Carolina") is a South Carolina limited liability company with its principal place of business in Stamford, Connecticut.  Charter South Carolina billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of South Carolina.

23.     Defendant Charter Fiberlink-Tennessee, LLC ("Charter Tennessee") is a Tennessee limited liability company with its principal place of business in Stamford, Connecticut.  Charter Tennessee billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Tennessee.

24.     Defendant Charter Fiberlink CC VIII, LLC ("Charter Wisconsin") is a Wisconsin limited liability company with its principal place of business in Stamford, Connecticut.  Charter Wisconsin billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Wisconsin.

25.     Defendant Citizens Telecommunications Company of Illinois, Inc. ("Frontier Citizens Illinois") is an Illinois corporation with its principal place of business in Stamford,

Connecticut.   Frontier Citizens Illinois billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Illinois.

26.   Frontier Communications-Midland, Inc. ("Frontier Midland") is an Illinois corporation with its principal place of business in Stamford, Connecticut.   Frontier Midland billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Illinois.

27.   Citizens Telecommunications Company of Minnesota, LLC ("Frontier Citizens Minnesota") is a Delaware limited liability company with its principal place of business in Stamford, Connecticut.   Frontier Citizens Minnesota billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Minnesota.

28.   Defendant   Frontier   Communications   of   Minnesota,   Inc.   ("Frontier Communications Minnesota") is a Minnesota corporation with its principal place of business in Stamford, Connecticut.   Frontier Communications Minnesota billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Minnesota.

29.   Defendant Citizens Telecommunications Company of New York, Inc. ("Frontier Citizens New York") is a New York corporation with its principal place of business in Stamford, Connecticut.  Frontier Citizens New York billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the states of New York and Pennsylvania.

30.   Defendant   Frontier   Communications   of   New   York,   Inc.   ("Frontier Communications New York") is a New York corporation with its principal place of business in

Stamford, Connecticut.   Frontier Communications New York billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of New York.

31.     Defendant Frontier Telephone of Rochester, Inc. ("Frontier Rochester") is a Delaware corporation with its principal place of business in Stamford, Connecticut.  Frontier Rochester billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of New York.

32.     Defendant Citizens Utilities Rural Company, Inc. ("Frontier Citizens Arizona") is a Delaware corporation with its principal place of business in Stamford, Connecticut.  Frontier Citizens Arizona billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Arizona.

33.     Defendant Citizens Telecommunications Company of the White Mountains, Inc. ("Frontier Citizens White Mountains") is a Delaware corporation with its principal place of business in Stamford, Connecticut.  Frontier Citizens White Mountains billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Arizona.

34.     Defendant Navajo Communications Co., Inc. ("Frontier Navajo") is a New Mexico corporation with its principal place of business in Stamford, Connecticut.  Frontier Navajo billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the states of Arizona, New Mexico, and Utah.

35.     Defendant Commonwealth Telephone Company, LLC ("Frontier Pennsylvania Telephone") is a Pennsylvania limited liability company with its principal place of business in Stamford, Connecticut.  Frontier Pennsylvania Telephone billed Sprint interstate and intrastate

switched access charges on intra MTA calls that originated and/or terminated in the state of Pennsylvania.

36.     Defendant CTSI, LLC ("CTSI") is a Pennsylvania limited liability company with its principal place of business in Stamford, Connecticut. CTSI billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Pennsylvania.

37.     Defendant Frontier Communications of Pennsylvania, LLC ("Frontier Communications Pennsylvania") is a Pennsylvania limited liability company with its principal place of business in Stamford, Connecticut. Frontier Communications Pennsylvania billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Pennsylvania.

38.     Defendant Citizens Telecom Services Company, LLC ("Frontier Citizens California") is a Delaware limited liability company with its principal place of business in Stamford, Connecticut. Frontier Citizens California billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the states of California and Idaho.

39.     Defendant Frontier Communications of Georgia, LLC ("Frontier Communications Georgia") is a Georgia limited liability company with its principal place of business in Stamford, Connecticut. Frontier Communications Georgia billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Georgia.

40.     Defendant Frontier Communications of Iowa, LLC ("Frontier Communications Iowa") is an Iowa limited liability company with its principal place of business in Stamford,

Connecticut. Frontier Communications Iowa billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Iowa.

41.    Defendant Citizens Telecommunications Company of Nebraska, LLC ("Frontier Citizens Nebraska") is a Delaware limited liability company with its principal place of business in Stamford, Connecticut.   Frontier Citizens Nebraska billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Nebraska.

42.    Defendant Citizens Telecommunications Company of Nevada ("Frontier Citizens Nevada") is a Nevada corporation with its principal place of business in Stamford, Connecticut. Frontier Citizens Nevada billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Nevada.

43.    Defendant    Frontier    Communications    of    Wisconsin,    LLC    ("Frontier Communications Wisconsin") is a Wisconsin limited liability company with its principal place of business in Stamford, Connecticut. Frontier Communications Wisconsin billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Wisconsin.

44.    Defendant    Frontier    Communications    –    St.    Croix,    LLC    ("Frontier Communications St. Croix") is a Wisconsin limited liability company with its principal place of business in Stamford, Connecticut. Frontier Communications St. Croix billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Wisconsin.

45.    Defendant Rhinelander Telephone, LLC ("Frontier Rhinelander") is a Wisconsin limited liability company with its principal place of business in Stamford, Connecticut. Frontier

Rhinelander billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of Wisconsin.

46.     Defendant Frontier Communications of the South, LLC ("Frontier Communications South") is an Alabama limited liability company with its principal place of business in Stamford, Connecticut. Frontier Communications South billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the states of Alabama and Florida.

47.     Defendant Citizens Telecommunications Company of West Virginia ("Frontier Citizens West Virginia") is a West Virginia corporation with its principal place of business in Stamford, Connecticut. Frontier Citizens West Virginia billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of West Virginia.

48.     Defendant Frontier West Virginia, Inc. ("Frontier West Virginia") is a West Virginia corporation with its principal place of business in Stamford, Connecticut. Frontier West Virginia billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the state of West Virginia.

49.     Defendant Frontier North, Inc. ("Frontier North") is a Wisconsin corporation with its principal place of business in Stamford, Connecticut.  Frontier North billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the states of Illinois, Indiana, Michigan, Ohio, and Wisconsin.

50.     Defendant Frontier Communications of the Southwest, Inc. ("Frontier Southwest") is a Delaware corporation with its principal place of business in Stamford, Connecticut. Frontier Southwest billed Sprint interstate and intrastate switched access charges on

12

intra MTA calls that originated and/or terminated in the states of Arizona, California, and Nevada.

51.     Defendant Frontier Communications Northwest, Inc. ("Frontier Northwest") is a Washington corporation with its principal place of business in Stamford, Connecticut. Frontier Northwest billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the states of Idaho, Oregon, and Washington.

52.     Defendant Frontier Communications of the Carolinas, LLC ("Frontier Carolinas") is a Delaware limited liability company with its principal place of business in Stamford, Connecticut. Frontier Carolinas billed Sprint interstate and intrastate switched access charges on intra MTA calls that originated and/or terminated in the states of North Carolina and South Carolina.

## JURISDICTION AND VENUE

53.     This Court has personal jurisdiction over each of the Defendants as they each have conducted continuous and systematic business within the state of Connecticut, or have a primary place of business in the state of Connecticut.

54.     This Court has original jurisdiction over Sprint's claims against many of the Defendants to this action pursuant to 28 U.S.C. §§ 1331 and 47 U.S.C. §§ 206 and 207, because many of the claims asserted by Sprint arise under the Communications Act of 1934, a law of the United States.  Specifically, the Court has jurisdiction pursuant to these provisions as to those Defendants who billed Sprint improperly on intraMTA calls pursuant to their interstate access tariffs and whose practices violate the Communications Act.

55.     All Defendants billed Sprint improperly on intraMTA calls pursuant to the intrastate access tariffs they filed with public utilities commissions under state law; however,

13

some of those Defendants did not bill Sprint switched access charges for intraMTA calls pursuant to their interstate tariffs. As to the Defendants who only billed Sprint improperly under intrastate tariffs, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, based on diversity of citizenship of the parties and the matter in controversy exceeding the sum or value of $75,000 with respect to these individual Defendants, exclusive of interest and costs.

56.     For those Defendants who billed Sprint switched access charges on intraMTA calls pursuant to their interstate access tariffs, they also billed Sprint improperly on intraMTA calls pursuant to their intrastate access tariffs. The Court has supplemental jurisdiction over these pendent state law claims pursuant to 28 U.S.C. § 1367(a).

57.     This Court also has jurisdiction over Sprint's requests for declaratory relief under 28 U.S.C. §§ 2201 and 2202.

58.     Venue is proper in this judicial district under 28 U.S.C. § 1391. Defendants have each conducted business in the state of Connecticut or have their primary place of business in the state of Connecticut, are subject to personal jurisdiction in the District of Connecticut, and therefore "reside" in the District of Connecticut within the meaning of 28 U.S.C. § 1391.

59.     Venue is also proper in this judicial district under 28 U.S.C. § 1391.

## DEFENDANTS' CONDUCT CONCERNING INTRAMTA CALLS

**A.** **IntraMTA Calls Are Never Subject To Switched Access Charges**

60.     IntraMTA calls may originate and terminate in the same state ("intrastate") or different states ("interstate").  All Defendants billed Sprint improperly out of their intrastate access tariffs, and most billed Sprint improperly under their interstate access tariffs as well.

61.     CMRS calls can be exchanged directly between CMRS carriers and LECs (such as the Defendants), or indirectly, meaning the call traverses the network of an intermediate carrier (such as Sprint).

62.     When one of the Defendants hands calls to Sprint for ultimate delivery to a CMRS carrier ("CMRS terminating"), or when CMRS carriers hand calls to Sprint for ultimate delivery to one of the Defendants ("CMRS originating"), Sprint generally carries the calls over what are known as Feature Group D trunks.

63.     In 1996, the Federal Communications Commission ("FCC") promulgated rules that stated "Telecommunications traffic exchanged between a LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area" is intraMTA and subject to reciprocal compensation, not access charges. 47 C.F.R. § 51.701(b)(2) (1996).  On December 29, 2011, the rule was modified to state that "[t]elecommunications traffic exchanged between a LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area" (*i.e.,* intraMTA traffic) was "non-access traffic." *Id.* (2011).

64.     From 2001 to December 29, 2011, "Telecommunications traffic" was defined in relevant part as that exchanged between a LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area…." 47 C.F.R. §

51.701(b)(2) (2001).  In 2011, the FCC modified this rule slightly to instead define the term to be

"Non-Access Telecommunications Traffic."  *Id.* (2011).

65.    In 1996, FCC rules also stated a "LEC may not assess charges on any other

telecommunications carrier for local telecommunications traffic that originates on the LEC's

network." 47 C.F.R. § 51.703(b) (1996).  In 2001, the FCC amended the rule to omit the word

"local," so that the rule read: a "LEC may not assess charges on any other telecommunications

carrier for telecommunications traffic that originates on the LEC's network." 47 C.F.R. §

51.703(b) (2001).  In 2011, that rule was modified slightly to state that a "LEC may not assess

charges on any other telecommunications carrier for Non-Access Telecommunications Traffic

that originates on the LEC's network." *Id.* (2011).

66.    In 1996, the FCC also issued its "First Report and Order" implementing the local

competition provisions in the Telecommunications Act of 1996.  In that voluminous decision, the

FCC stated:

> 1034. We conclude that section 251(b)(5) reciprocal compensation obligations
> should apply only to traffic that originates and terminates within a local area, as defined
> in the following paragraph.  We disagree with Frontier's contention that section 251(b)(5)
> entitles an IXC to receive reciprocal compensation from a LEC when a long-distance call
> is passed from the LEC serving the caller to the IXC. Access charges were developed to
> address a situation in which three carriers -- typically, the originating LEC, the IXC, and
> the terminating LEC -- collaborate to complete a long-distance call. As a general matter,
> in the access charge regime, the long-distance caller pays long-distance charges to the
> IXC, and the IXC must pay both LECs for originating and terminating access service. . . .

> 1035. With the exception of traffic to or from a CMRS network, state
> commissions have the authority to determine what geographic areas should be considered
> "local areas" for the purpose of applying reciprocal compensation obligations under
> section 251(b)(5), consistent with the state commissions' historical practice of defining
> local service areas for wireline LECs. . . .

> 1036. On the other hand, in light of this Commission's exclusive authority to
> define the authorized license areas of wireless carriers, we will define the local service
> area for calls to or from a CMRS network for the purposes of applying reciprocal
> compensation obligations under section 251(b)(5). Different types of wireless carriers

have different FCC-authorized licensed territories, the largest of which is the "Major Trading Area" (MTA). Because wireless licensed territories are federally authorized, and vary in size, we conclude that the largest FCC-authorized wireless license territory (*i.e.*, MTA) serves as the most appropriate definition for local service area for CMRS traffic for purposes of reciprocal compensation under section 251(b)(5) as it avoids creating artificial distinctions between CMRS providers. Accordingly, traffic to or from a CMRS network that originates and terminates within the same MTA is subject to transport and termination rates under section 251(b)(5), rather than interstate and intrastate access charges.

*In re Implementation of the Local Competition Provisions of the Telecomms. Act of 1996*, 11 FCC Rcd 15499 ¶¶ 1034-1036 (1996) ("*First Report and Order*") (*subsequent history omitted*), (footnotes omitted).

67.     Federal courts have uniformly held that, irrespective of whether CMRS originating or CMRS terminating calls traverse an intermediate carrier, and irrespective of whether the same calls are transported over a Feature Group D facility, the aforementioned rules apply, and intraMTA calls are never subject to switched access charges. *See, e.g., Iowa Network Servs., Inc. v. Qwest Corp.,* 466 F.3d 1091 (8th Cir. 2006); *Alma Commc'ns Co. v. Missouri Pub. Serv. Comm'n,* 490 F.3d 619 (8th Cir. 2007).

68.     In November 2011, the FCC issued its *Connect America* decision, *In re Connect America Fund*, 26 FCC Rcd 17663 (2011) (Report and Order and Notice of Further Rulemaking, "*Connect America*"), *final rules published*, 76 Fed. Reg. 73830 (Nov. 29, 2011), *recon. in part,* 2011 WL 6778613 (Dec. 23, 2011) (subsequent history omitted), and the rules promulgated thereunder restate that intraMTA traffic is not subject to switched access charges, irrespective of whether the call is carried by an intermediate IXC.  Specifically:

> 1003.  In the *Local Competition First Report and Order*, the Commission stated that calls between a LEC and a CMRS provider that originate and terminate within the same Major Trading Area (MTA) at the time that the call is initiated are subject to reciprocal compensation obligations under section 251(b)(5), rather than interstate or intrastate access charges. . . .

1004.   The record presents several issues regarding the scope and interpretation of the intraMTA rule. Because the changes we adopt in this Order maintain, during the transition, distinctions in the compensation available under the reciprocal compensation regime and compensation owed under the access regime, parties must continue to rely on the intraMTA rule to define the scope of LEC-CMRS traffic that falls under the reciprocal compensation regime. *We therefore take this opportunity to remove any ambiguity regarding the interpretation of the intraMTA rule.*

***

1007.   In a further pending dispute, some LECs have argued that if completing a call to a CMRS provider requires a LEC to route the call to an intermediary carrier outside the LEC's local calling area,[FN2129] the call is subject to access charges, not reciprocal compensation, even if the call originates and terminates within the same MTA. One commenter in this proceeding asks us to affirm that such traffic is subject to reciprocal compensation. *We therefore clarify that the intraMTA rule means that all traffic exchanged between a LEC and a CMRS provider that originates and terminates within the same MTA, as determined at the time the call is initiated, is subject to reciprocal compensation regardless of whether or not the call is, prior to termination, routed to a point located outside that MTA or outside the local calling area of the LEC.*[FN2132] *Similarly, intraMTA traffic is subject to reciprocal compensation regardless of whether the two end carriers are directly connected or exchange traffic indirectly via a transit carrier.*[FN2133]

FN2129.   This occurs when the LEC and CMRS provider are "indirectly interconnected," i.e. when there is a third carrier to which they both have direct connections, and which is then used as a conduit for the exchange of traffic between them.

FN2132.  . . .  We find that the potential implementation issues raised by Vantage Point do not warrant a different construction of the intraMTA rule than what we adopt above. Although Vantage Point questions whether the intraMTA rule is feasible when a call is routed through interexchange carriers, many incumbent LECs have already, pursuant to state commission and appellate court decisions, extended reciprocal compensation arrangements with CMRS providers to intraMTA traffic without regard to whether a call is routed through interexchange carriers. *See, e.g., Alma Communications Co. v. Missouri Public Service Comm'n*, 490 F.3d 619, 623-34 (8th Cir. 2007) (noting and affirming arbitration decision requiring incumbent LEC to compensate CMRS provider for costs incurred in transporting and terminating land-line to cell-phone calls placed to cell phones within the same MTA, even if those calls were routed through a long-distance carrier); *Atlas Telephone Co. v. Oklahoma Corp. Comm'n*, 400 F.3d 1256 (10th Cir. 2005). Further, while Vantage Point asserts that it is not currently possible to determine if a call is interMTA or intraMTA, Vantage Point Oct. 21, 2011 Ex Parte Letter at 2-3, the Commission addressed this concern when it adopted the rule. *See Local Competition First Report and Order*, 11 FCC Rcd at 16017, para. 1044 (stating that parties may calculate overall compensation amounts by extrapolating from traffic studies and samples).

FN2133. *See* Sprint Nextel Section XV Comments at 22-23 (arguing that the Commission should reaffirm that all intraMTA traffic to or from a CMRS provider is subject to reciprocal compensation). ***This clarification is consistent with how the intraMTA rule has been interpreted by the federal appellate courts****. See Alma Communications Co. v. Missouri Public Service Comm'n*, 490 F.3d 619 (8th Cir. 2007); *Iowa Network Services, Inc. v. Qwest Corp.*, 466 F.3d 1091 (8th Cir. 2006); *Atlas Telephone Co. v. Oklahoma Corp. Commission*, 400 F.3d 1256 (10th Cir. 2005).

*Connect America* ¶¶ 1003-1007 (emphasis added) (certain footnotes omitted).

69.     Given the FCC rules and decisions as well as the federal court decisions, liability on each of Sprint's claims presents an identical question of law, and none of the legal issues or related claims should require unique or individualized proof to establish liability.

**B.     Defendants Improperly Billed Sprint Switched Access Charges On IntraMTA Calls.**

70.     Upon information and belief, at all relevant times Defendants SNET, Charter California, Charter Connecticut, Charter Illinois, Charter Michigan, Charter Minnesota, Charter Missouri, Charter Missouri, Charter North Carolina, Charter Nevada, Charter Oregon, Charter South Carolina, Charter Tennessee, Charter Wisconsin, Frontier Citizens Illinois, Frontier Midland, Frontier Citizens Minnesota, Frontier Citizens New York, Frontier Communications New York, Frontier Citizens Arizona, Frontier Navajo, Frontier Pennsylvania Telephone, CTSI, Frontier Communications Pennsylvania, Frontier Citizens California, Frontier Citizens Nevada, Frontier Communications St. Croix, Frontier Communications South, Frontier Citizens West Virginia, Frontier West Virginia, Frontier North, Frontier Southwest, Frontier Northwest, and Frontier Carolinas (collectively, the "Federal Defendants") had interstate access tariffs on file with the FCC.  These Defendants billed Sprint originating and/or terminating switched access charges on intraMTA calls from their interstate tariffs in violation of law.

71. Upon information and belief, at all relevant times, all Defendants had intrastate access tariffs on file with their respective state utilities regulatory commissions. These Defendants billed Sprint originating and/or terminating switched access charges on intraMTA calls from their state tariffs in violation of law.

72. None of the Defendants have a negotiated contract with Sprint for access related services that would limit or bar Sprint's claims.

73. These improper billings have caused Sprint millions of dollars in damages, and continue to generate additional damages.

## COUNT I

**47 U.S.C. §§ 206, 207 Claim for Violation of 47 U.S.C. § 201(b)**
**(Interstate IntraMTA Calling)**
**(Against Defendants SNET, Charter California, Charter Connecticut, Charter Illinois, Charter Michigan, Charter Minnesota, Charter Missouri, Charter Missouri, Charter North Carolina, Charter Nevada, Charter Oregon, Charter South Carolina, Charter Tennessee, Charter Wisconsin, Frontier Citizens Illinois, Frontier Midland, Frontier Citizens Minnesota, Frontier Citizens New York, Frontier Communications New York, Frontier Citizens Arizona, Frontier Navajo, Frontier Pennsylvania Telephone, CTSI, Frontier Communications Pennsylvania, Frontier Citizens California, Frontier Citizens Nevada, Frontier Communications St. Croix, Frontier Communications South, Frontier Citizens West Virginia, Frontier West Virginia, Frontier North, Frontier Southwest, Frontier Northwest, and Frontier Carolinas – collectively, the "Federal Defendants")**

74. Sprint repeats and realleges each and every allegation of paragraphs 1 through 73 above, and incorporates them by reference as though fully set forth herein.

75. The Federal Defendants are common carriers and have each engaged in an unjust and unreasonable practice in connection with their duties as common carriers under Section 201(b), namely: Defendants each improperly billed Sprint originating and terminating switched access charges from their interstate tariffs on interstate, intraMTA calls.

76.     The FCC's rules and decisions, as affirmed by federal courts, make plain that the filed interstate access tariffs of these Defendants do not provide these entities with a basis to charge or collect interstate access charges from Sprint on intraMTA traffic.

77.     The FCC has stated in its rules, and in many decisions, that a LEC engages in an unjust and unreasonable practice under Section 201(b) when it (a) bills an interexchange carrier for tariffed access charges without a basis to do so under its tariff (*see, e.g., Qwest Commc'ns Corp. v. Farmers and Merchs. Mut. Tel. Co.,* 24 FCC Rcd 14801 (2009), *aff'd sub nom., Farmers and Merchs. Mut. Tel. of Wayland v. FCC,* 668 F.3d 714 (D. C. Cir. 2011); *AT&T Corp. v. All Am. Tel. Co.,* 28 FCC Rcd 3477 (2013)) or (b) charges a carrier for intraMTA CMRS traffic from the LEC's network.  *See, e.g., In re TSR Wireless, LLC v. US WEST Commc'ns,* 15 FCC Rcd. 11166 ¶ 29 (2000); 47 C.F.R. §§ 51.701, 51.703.

78.     Each of the Federal Defendants therefore engaged in an unjust and unreasonable practice in connection with its respective provision of interstate communication services, in violation of its common carrier obligations.

79.     The Federal Defendants' violations of Section 201(b) have caused Sprint to suffer actual and consequential economic damages in an amount that Sprint will prove at trial.  Sprint therefore has the right to sue for its actual damages resulting from each Defendant's violations of Section 201(b), pursuant to Sections 206 and 207 of Title 47 of the United States Code.  Pursuant to Section 206, Sprint also seeks its reasonable attorneys' fees and costs incurred in this litigation.

## COUNT II

### 47 U.S.C. §§ 206, 207 Claim for Violation of 47 U.S.C. § 203
### (Interstate IntraMTA Calling)
### (Against the Federal Defendants)

80.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 79 above, and incorporates them by reference as though fully set forth herein.

81.     On information and belief, the Federal Defendants' interstate access tariffs do not exempt intraMTA calls.  As a result, the interstate access tariffs conflict with FCC rules and are *ultra vires.  See, e.g., Iowa Network Servs. v. Qwest*, 385 F. Supp. 2d 850, 899-900 (S.D. Iowa 2005), *aff'd*, 466 F.3d 1091 (8th Cir. 2006).  *Cf., Paetec Commc'ns, Inc. v. MCI Commc'ns Serv., Inc.*, 712 F. Supp. 2d 405, 416-17 (E.D. Pa. 2010), *appeal dismissed; Paetec Commc'ns Inc. v. CommPartners, LLC*, 2010 WL 1767193, at *4-5 (D.D.C. Feb. 18, 2010), *appeal dismissed*; *Global NAPs v. FCC*, 247 F.3d 252, 260 (D.C. Cir. 2001) ("tariffs still must comply with the applicable statutory and regulatory requirements").   The Federal Defendants cannot bill or collect tariffed charges on the intraMTA traffic.

82.     The Federal Defendants' billing of charges that are *ultra vires* of the Communications Act violate Sections 203(a) and (c).

83.     The Federal Defendants' violations of Section 203 have caused Sprint to suffer actual and consequential economic damages in an amount that Sprint will prove at trial.  Sprint therefore has the right to sue for its actual damages resulting from Defendants' respective violations of Section 203, pursuant to Sections 206 and 207 of Title 47 of the United States Code. Pursuant to Section 206, Sprint Communications also seeks its reasonable attorneys' fees and costs incurred in this litigation.

## COUNT III

**(Breach of Contract/Interstate IntraMTA Calling)**
**(Against the Federal Defendants)**

84.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 83 above, and incorporates them by reference as though fully set forth herein.

85.    The Federal Defendants' interstate switched access tariffs constitute contracts between each of the Defendants and any purchaser of services from those tariffs, which includes Sprint.

86.    The Federal Defendants are each charging Sprint switched access charges on interstate calls that do not qualify for such charges, in violation of their respective interstate access tariffs.

87.    Each of the Federal Defendants is in breach of its respective tariff provisions when it bills Sprint for interstate calls as they do not qualify for such charges. To the extent the tariffs purport to allow such charges, they are unenforceable.

88.    As a direct and proximate result of each of the Federal Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT IV

**(Breach of Contract/Intrastate IntraMTA Calling (Alabama)**
**(Against Defendants Charter Alabama and Frontier South – collectively, the "Alabama Defendants")**

89.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 88 above, and incorporates them by reference as though fully set forth herein.

90.    Each of the Alabama Defendants' intrastate switched access tariffs on file with the Alabama Public Service Commission each constitutes a contract between each of the Alabama Defendants and any purchaser of services from those tariffs, which includes Sprint.

23

91.     The Alabama Defendants are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Alabama intrastate access tariffs.   To the extent the tariffs purport to allow such charges, they are unenforceable.

92.     Each of the Alabama Defendants is in breach of its respective Alabama tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

93.     As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT V

**(Breach of Contract/Intrastate IntraMTA Calling (Arizona))**
**(Against Defendants Frontier Citizens Arizona, Frontier Citizens White Mountains, Frontier Navajo, and Frontier Southwest – collectively, the "Arizona Defendants")**

94.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 93 above, and incorporates them by reference as though fully set forth herein.

95.     Each of the Arizona Defendants' intrastate switched access tariffs on file with the Arizona Corporation Commission constitutes a contract between each of the Arizona Defendants and any purchaser of services from those tariffs, which includes Sprint.

96.     The Arizona Defendants are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Arizona intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

97.     Each of the Arizona Defendants is in breach of their Arizona tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

98.     As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

24

## COUNT VI

**(Breach of Contract/Intrastate IntraMTA Calling (California))**
**(Against Defendants Charter California, Frontier Citizens California, and Frontier Southwest - collectively, the "California Defendants")**

99.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 98 above, and incorporates them by reference as though fully set forth herein.

100.   Each of the California Defendants' intrastate switched access tariffs on file with the California Public Utilities Commission constitutes a contract between each of the California Defendants and any purchaser of services from those tariffs, which includes Sprint.

101.   The California Defendants are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their California intrastate access tariffs.   To the extent the tariffs purport to allow such charges, they are unenforceable.

102.   Each of the California Defendants is in breach of its California tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

103.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT VII

**(Breach of Contract/Intrastate IntraMTA Calling (Connecticut))**
**(Against Defendants SNET and Charter Connecticut - collectively, the "Connecticut Defendants")**

104.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 103 above, and incorporates them by reference as though fully set forth herein.

105.   Each of the Connecticut Defendants' intrastate switched access tariffs on file with the Connecticut Public Utilities Regulatory Authority constitutes a contract between each of the Connecticut Defendants and any purchaser of services from those tariffs, which includes Sprint.

25

106. The Connecticut Defendants are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their Connecticut intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

107. Each of the Connecticut Defendants is in breach of its Connecticut tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

108. As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT VIII

### (Breach of Contract/Intrastate IntraMTA Calling (Florida)) (Against Defendant Frontier Communications South)

109. Sprint repeats and realleges each and every allegation of paragraphs 1 through 108 above, and incorporates them by reference as though fully set forth herein.

110. Defendant Frontier Communications South's intrastate switched access tariffs on file with the Florida Public Service Communication constitute contracts between Defendant and any purchaser of services from those tariffs, which includes Sprint.

111. Defendant Frontier Communications South is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Florida intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

112. Defendant Frontier Communications South is in breach of its Florida tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

113. As a direct and proximate result of Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

26

## COUNT IX

**(Breach of Contract/Intrastate IntraMTA Calling (Georgia))**
**(Against Defendants Charter Georgia and Frontier Communications Georgia - collectively, the "Georgia Defendants")**

114.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 113 above, and incorporates them by reference as though fully set forth herein.

115.   Each of the Georgia Defendants' intrastate switched access tariffs on file with the Georgia Public Service Commission constitutes a contract between each of the Georgia Defendants and any purchaser of services from those tariffs, which includes Sprint.

116.   The Georgia Defendants are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their Georgia intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

117.   Each of the Georgia Defendants is in breach of its Georgia tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

118.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT X

**(Breach of Contract/Intrastate IntraMTA Calling (Iowa))**
**(Against Defendant Frontier Iowa)**

119.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 118 above, and incorporates them by reference as though fully set forth herein.

120.   Defendant Frontier Iowa's intrastate switched access tariffs on file with the Iowa Utilities Board constitute contracts between Defendant and any purchaser of services from those tariffs, which includes Sprint.

121.   Defendant Frontier Iowa is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Iowa intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

122.   Defendant Frontier Iowa is in breach of its Iowa tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

123.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XI

**(Breach of Contract/Intrastate IntraMTA Calling (Idaho))**
**(Against Defendants Frontier Citizens California and Frontier Northwest – collectively, the "Idaho Defendants")**

124.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 123 above, and incorporates them by reference as though fully set forth herein.

125.   Each of the Idaho Defendants' intrastate switched access tariffs on file with the Idaho Public Utilities Commission constitutes a contract between each of the Idaho Defendants and any purchaser of services from those tariffs, which includes Sprint.

126.   The Idaho Defendants are charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their Idaho intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

127.   Each of the Idaho Defendants is in breach of its Idaho tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

128.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XII

**(Breach of Contract/Intrastate IntraMTA Calling (Illinois))**
**(Against Defendants Charter Illinois, Frontier Citizen Illinois, Frontier Midland, and**
**Frontier North - collectively, the "Illinois Defendants")**

129.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 128 above, and incorporates them by reference as though fully set forth herein.

130.   Each of the Illinois Defendants' intrastate switched access tariffs on file with the Illinois Commerce Commission constitutes a contract between each of the Illinois Defendants and any purchaser of services from those tariffs, which includes Sprint.

131.   The Illinois Defendants are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their Illinois intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

132.   Each of the Illinois Defendants is in breach of its Illinois tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

133.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XIII

**(Breach of Contract/Intrastate IntraMTA Calling (Indiana))**
**(Against Defendant Frontier North)**

134.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 133 above, and incorporates them by reference as though fully set forth herein.

135.   Defendant Frontier North's intrastate switched access tariffs on file with the Indiana Utility Regulatory Commission constitute contracts between Defendant and any purchaser of services from those tariffs, which includes Sprint.

136.   Defendant Frontier North is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Indiana intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

137.   Defendant Frontier North is in breach of its Indiana tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

138.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XIV

### (Breach of Contract/Intrastate IntraMTA Calling (Michigan)
### (Against Defendants Charter Michigan and Frontier North - collectively, the "Michigan Defendants")

139.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 138 above, and incorporates them by reference as though fully set forth herein.

140.   Each of the Michigan Defendants' intrastate switched access tariffs on file with the Michigan Public Service Commission constitutes a contract between each of the Michigan Defendants and any purchaser of services from those tariffs, which includes Sprint.

141.   The Michigan Defendants are charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

142.   Each of the Michigan Defendants is in breach of its Michigan tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

143.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XV

**(Breach of Contract/Intrastate IntraMTA Calling (Minnesota))**
**(Against Defendants Charter Minnesota, Frontier Citizens Minnesota, and Frontier Communications Minnesota - collectively, the "Minnesota Defendants")**

144.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 143 above, and incorporates them by reference as though fully set forth herein.

145.   Each of the Minnesota Defendants' intrastate switched access tariffs on file with the Minnesota Public Utilities Commission constitutes a contract between each of the Minnesota Defendants and any purchaser of services from those tariffs, which includes Sprint.

146.   The Minnesota Defendants are charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

147.   Each of the Minnesota Defendants is in breach of its Minnesota tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

148.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XVI

**(Breach of Contract/Intrastate IntraMTA Calling (Missouri))**
**(Against Defendant Charter Missouri)**

149.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 148 above, and incorporates them by reference as though fully set forth herein.

150.   Defendant Charter Missouri's intrastate switched access tariffs on file with the Missouri Public Service Commission constitutes contracts between Defendant and any purchaser of services from those tariffs, which includes Sprint.

151.   Defendant Charter Missouri is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

152.   Defendant Charter Missouri is in breach of its Missouri tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

153.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XVII

**(Breach of Contract/Intrastate IntraMTA Calling (North Carolina))**
**(Against Defendants Charter North Carolina and Frontier Carolinas - collectively, the "North Carolina Defendants")**

154.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 153 above, and incorporates them by reference as though fully set forth herein.

155.   Each of the North Carolina Defendants' intrastate switched access tariffs on file with the North Carolina Utilities Commission constitutes a contract between each of the North Carolina Defendants and any purchaser of services from those tariffs, which includes Sprint.

156.   The North Carolina Defendants are charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

157.   Each of the North Carolina Defendants is in breach of its North Carolina tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

158.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XVIII

**(Breach of Contract/Intrastate IntraMTA Calling (Nebraska))**
**(Against Defendant Frontier Nebraska)**

159.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 158 above, and incorporates them by reference as though fully set forth herein.

160.   Defendant Frontier Nebraska's intrastate switched access tariffs on file with the Nebraska Public Service Commission constitute contracts between it and any purchaser of services from those tariffs, which includes Sprint.

161.   Defendant Frontier Nebraska is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

162.   Defendant Frontier Nebraska is in breach of its Nebraska tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

163.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XIX

**(Breach of Contract/Intrastate IntraMTA Calling (New Mexico))**
**(Against Defendant Frontier Navajo)**

164.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 163 above, and incorporates them by reference as though fully set forth herein.

165.   Defendant Frontier Navajo's intrastate switched access tariffs on file with the New Mexico Public Regulation Commission constitutes a contract between it and any purchaser of services from those tariffs, which includes Sprint.

166.   Defendant Frontier Navajo is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

167.   Defendant Frontier Navajo is in breach of its New Mexico tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

168.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

<u>**COUNT XX**</u>

**(Breach of Contract/Intrastate IntraMTA Calling (Nevada))**
**(Against Defendants Charter Nevada, Frontier Citizens Nevada, and Frontier Southwest - collectively, the "Nevada Defendants")**

169.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 168 above, and incorporates them by reference as though fully set forth herein.

170.   Each of the Nevada Defendants' intrastate switched access tariffs on file with the Nevada Public Utilities Commission constitutes a contract between each of the Nevada Defendants and any purchaser of services from those tariffs, which includes Sprint.

171.   The Nevada Defendants is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

172.   Each of the Nevada Defendants is in breach of its Nevada tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

173.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXI

**(Breach of Contract/Intrastate IntraMTA Calling (New York))**
**(Against Defendants Frontier Citizens New York, Frontier Communications New York,**
**and Frontier Rochester - collectively, the "New York Defendants")**

174.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 173 above, and incorporates them by reference as though fully set forth herein.

175.   Each of the New York Defendants' intrastate switched access tariffs on file with the New York Public Service Commission constitutes a contract between each of the New York Defendants and any purchaser of services from those tariffs, which includes Sprint.

176.   The New York Defendants is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

177.   Each of the New York Defendants is in breach of its New York tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

178.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXII

**(Breach of Contract/Intrastate IntraMTA Calling (Ohio))**
**(Against Defendant Frontier North)**

179.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 178 above, and incorporates them by reference as though fully set forth herein.

180.   Defendant Frontier North's intrastate switched access tariffs on file with the Ohio Public Utilities Commission constitutes a contract between Defendant and any purchaser of services from those tariffs, which includes Sprint.

181.   Defendant Frontier North is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Ohio intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

182.   Defendant Frontier North is in breach of its Ohio tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

183.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXIII

### (Breach of Contract/Intrastate IntraMTA Calling (Oregon)) (Against Defendant Frontier Northwest)

184.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 183 above, and incorporates them by reference as though fully set forth herein.

185.   Defendant Frontier Northwest's intrastate switched access tariffs on file with the Oregon Public Utility Commission constitutes a contract between Defendant and any purchaser of services from those tariffs, which includes Sprint.

186.   Defendant Frontier Northwest is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Oregon intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

187.   Defendant Frontier Northwest is in breach of its Oregon tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

188.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXIV

**(Breach of Contract/Intrastate IntraMTA Calling (Pennsylvania))**
**(Against Defendants Frontier Pennsylvania Telephone, CTSI, and Frontier**
**Communications Pennsylvania - collectively, the "Pennsylvania Defendants")**

189.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 188 above, and incorporates them by reference as though fully set forth herein.

190.   Each of the Pennsylvania Defendants' intrastate switched access tariffs on file with the Pennsylvania Public Utility Commission constitutes a contract between each of the Pennsylvania Defendants and any purchaser of services from those tariffs, which includes Sprint.

191.   The Pennsylvania Defendants are charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

192.   Each of the Pennsylvania Defendants is in breach of its Pennsylvania tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

193.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXV

**(Breach of Contract/Intrastate IntraMTA Calling (South Carolina))**
**(Against Defendants Charter South Carolina and Frontier Carolinas - collectively, the**
**"South Carolina Defendants")**

194.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 193 above, and incorporates them by reference as though fully set forth herein.

195.   Each of the South Carolina Defendants' intrastate switched access tariffs on file with the South Carolina Public Service Commission constitutes a contract between each of the

South Carolina Defendants and any purchaser of services from those tariffs, which includes Sprint.

196.   The South Carolina Defendants are charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

197.   Each of the South Carolina Defendants is in breach of its South Carolina tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

198.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXVI

**(Breach of Contract/Intrastate IntraMTA Calling (Tennessee))**
**(Against Defendant Charter Tennessee)**

199.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 198 above, and incorporates them by reference as though fully set forth herein.

200.   Defendant Charter Tennessee's intrastate switched access tariffs on file with the Tennessee Regulatory Authority constitute contracts between Defendant and any purchaser of services from those tariffs, which includes Sprint.

201.   Defendant Charter Tennessee is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

202.   Defendant Charter Tennessee is in breach of its Tennessee tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

203.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXVII

**(Breach of Contract/Intrastate IntraMTA Calling (Washington))
(Against Defendant Frontier Northwest)**

204.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 203 above, and incorporates them by reference as though fully set forth herein.

205.   Defendant Frontier Northwest's intrastate switched access tariffs on file with the Washington Utilities and Transportation Commission each constitutes a contract between Defendant and any purchaser of services from those tariffs, which includes Sprint.

206.   Defendant Frontier Northwest is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Washington intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

207.   Defendant Frontier Northwest is in breach of its Washington tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

208.   As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXVIII

**(Breach of Contract/Intrastate IntraMTA Calling (Wisconsin))
(Against Defendants Charter Wisconsin, Frontier Communications Wisconsin, Frontier
Communications St. Croix, Frontier Rhinelander, and Frontier North - collectively, the
"Wisconsin Defendants")**

209.   Sprint repeats and realleges each and every allegation of paragraphs 1 through 208 above, and incorporates them by reference as though fully set forth herein.

210.   Each of the Wisconsin Defendants' intrastate switched access tariffs on file with the Wisconsin Public Service Commission constitutes a contract between each of the Wisconsin Defendants and any purchaser of services from those tariffs, which includes Sprint.

211. The Wisconsin Defendants are charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

212. Each of the Wisconsin Defendants is in breach of its Wisconsin tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

213. As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXIX

**(Breach of Contract/Intrastate IntraMTA Calling (West Virginia))**
**(Against Defendants Frontier Citizens West Virginia and Frontier West Virginia –**
**collectively, the "West Virginia Defendants")**

214. Sprint repeats and realleges each and every allegation of paragraphs 1 through 213 above, and incorporates them by reference as though fully set forth herein.

215. Each of the West Virginia Defendants' intrastate switched access tariffs on file with the West Virginia Public Service Commission constitutes a contract between each of the West Virginia Defendants and any purchaser of services from those tariffs, which includes Sprint.

216. The West Virginia Defendants are charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

217. Each of the West Virginia Defendants is in breach of its West Virginia tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

218. As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXX

### (Declaratory Relief)
### (All Defendants)

219.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 218 above, and incorporates them by reference as though fully set forth herein.

220.    The access invoices the Defendants submit to Sprint seeking to collect interstate and/or intrastate switched access charges on intraMTA calling are illegal and improper.   The inclusion of these access charges in bills submitted to Sprint violates the Defendants' interstate and intrastate access tariffs, the Communications Act, and the FCC's implementing rules.

221.    Sprint is entitled to judgment under 28 U.S.C. § 2201(a) declaring that, *inter alia*:

    a.    Sprint is not responsible for paying interstate and intrastate access charges on intraMTA calls;

    b.    Each Defendant must either create a process that does not assess switched access charges on intraMTA calls, or use a traffic study, as contemplated by First Report and Order ¶ 1044, to assess the percentage of its calling that is intraMTA and prospectively submit access bills that subtract that percentage of calling from the access invoices submitted to Sprint.

## PRAYER FOR RELIEF

**WHEREFORE,** for the reasons stated above, Sprint Communications Company L.P. respectfully requests that judgment be entered for Sprint Communications Company L.P. on each and all of its claims, together with appropriate damages, reasonable costs and fees, including attorneys' fees and expert fees, and interest together with such other and further relief as the Court may deem just and equitable under the circumstances.

Dated:      June 4, 2014            By: _____
            New Canaan, CT          Brendan J. O'Rourke (ct00522)
                                    Lorey Rives Leddy (ct19297)
                                    **O'ROURKE & ASSOCIATES, LLC**
                                    27 Pine Street
                                    New Canaan, CT 06840
                                    Phone: (203) 966-6664
                                    Fax: (203) 966-5710
                                    Email: lorey@orourkeandassoc.com


                                    BRET A. DUBLINSKE
                                    BRANT M. LEONARD
                                    **FREDRIKSON & BYRON, P.A.**
                                    309 East 5th Street
                                    Suite 202A
                                    Des Moines, IA  50309
                                    Telephone:  (515) 242-8900
                                    Email: bdublinske@fredlaw.com
                                           bleonard@fredlaw.com

                                    *ATTORNEYS FOR SPRINT*